UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PLAQUEMINES PARISH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-6722** |
| **ROZEL OPERATING COMPANY, ET AL.** | **SECTION I** |

## ORDER AND REASONS

The Court has pending before it a motion[1] to remand filed by plaintiff, Plaquemines Parish ("the Parish"). Various defendants have filed oppositions[2] or joinders[3] to oppositions. For the following reasons, the motion to remand is **GRANTED**.

## BACKGROUND

This case is one of a number filed by the Parish against various defendants for alleged violations of permits issued pursuant to the State and Local Coastal Resources Management Act of 1978.[4] The Parish filed a petition in the 25th Judicial District Court for the Parish of Plaquemines on November 8, 2013.[5] Various defendants removed to this Court on December 18, 2013.[6] The Parish then filed a motion[7] to remand, and the Court issued an order[8] deferring its ruling on the motion to remand and staying proceedings until another section of this Court resolved a motion to remand presenting substantially identical issues.

---

[1] R. Doc. No. 26.
[2] R. Doc. Nos. 51, 54.
[3] R. Doc. Nos. 53, 56, 57.
[4] R. Doc. No. 1-1, at 23.
[5] R. Doc. No. 1-1, at 23.
[6] R. Doc. No. 1.
[7] R. Doc. No. 26.
[8] R. Doc. No. 36.

On December 1, 2014, Judge Zainey issued a thorough and well-reasoned order and reasons granting a similar motion to remand. *See Parish of Plaquemines v. Total Petrochemical & Refining USA, Inc.* ("*Total*"), No. 13-6693, 2014 WL 6750649 (E.D. La. Dec. 1, 2014) (Zainey, J.). In *Total*, Judge Zainey determined that he lacked diversity as well as Outer Continental Shelf Lands Act ("OCSLA"), admiralty, and federal question jurisdiction over substantially similar claims brought by the Parish. Accordingly, the Court issued an order[9] setting a briefing schedule on the motion to remand. Briefing is now complete and the motion is ripe for decision.

In the present case, the Parish asserts permit-violation claims relating to a different geographic area.[10] Although different areas and permits are involved, the cases are functionally indistinguishable and the Court assumes familiarity with the *Total* opinion's characterization of the nature of this lawsuit. For the purposes of resolving this motion to remand, it is enough to note that (1) at least one defendant is a citizen of Louisiana,[11] (2) the conduct which is alleged to have directly violated the permits at issue occurred within Plaquemines Parish and not on the outer continental shelf ("OCS"),[12] and (3) the Parish disclaims, at great length, any claims other than state-law permit violation claims.[13]

## STANDARD

The Court has jurisdiction over a removed action if it is a "civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The removing party has the burden to establish the existence of jurisdiction. *Winters*

---

[9] R. Doc. No. 48.
[10] R. Doc. No. 1-1, at 24-25, 45-48.
[11] R. Doc. No. 1-1, at 24.
[12] R. Doc. No. 1-1, at 38-39; R. Doc. No. 27-28.
[13] R. Doc. No. 1-1, at 37-41.

*v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998). "To determine whether jurisdiction is present for removal, [courts] consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed." *J.O.B. Invs., LLC v. Gootee Servs., LLC*, 908 F. Supp. 2d 771, 773 (E.D. La. 2012) (Vance, C.J.) (citing *Manguno*, 276 F.3d at 723).

## ANALYSIS

As previously stated, the parties dispute four potential bases for removal jurisdiction in connection with the Parish's motion to remand: (1) diversity jurisdiction pursuant to 28 U.S.C. § 1332, (2) OCSLA jurisdiction pursuant to 43 U.S.C. § 1349(b)(1), (3) admiralty jurisdiction pursuant to 28 U.S.C. § 1333, and (4) federal-question jurisdiction pursuant to 28 U.S.C. § 1331.

The Court again notes that it does not write on a blank canvas with respect to these issues. The Court is persuaded by the thoughtful reasoning in *Total* and sees little benefit in rehashing arguments that have been thoroughly aired and addressed. Accordingly, the Court will address the parties' arguments only to the extent that they assert errors in the *Total* opinion or raise arguments not briefed in that case.[14]

**A.    Diversity Jurisdiction**

As was the case in *Total*, complete diversity of citizenship is lacking on the face of the state-court petition because at least one defendant is a citizen of Louisiana and the Parish, as a

---

[14] The *Total* order addressed one basis for jurisdiction, federal enclave jurisdiction, which the parties do not raise in this case. *See* 2014 WL 6750649, at *20.

subdivision of the State of Louisiana, is considered a citizen of Louisiana for diversity jurisdiction purposes.[15] *See Moor v. Alameda County*, 411 U.S. 693, 717 (1973).

As they did in *Total*, defendants contend that the Court should ignore the citizenship of any nondiverse defendant because the Parish egregiously misjoined its claims in order to defeat complete diversity.[16] Under the egregious misjoinder theory, sometimes called *Tapscott* misjoinder, there may be improper[17] "joinder in instances in which the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant and there is no joint, several or alternative liability." *See J.O.B. Invs.*, 908 F. Supp. 2d at 774 (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)).[18]

The Louisiana Code of Civil Procedure defines "cumulation of actions" as "the joinder of separate actions in the same judicial demand, whether by a single plaintiff against a single defendant, or by one or more plaintiffs against one or more defendants." La. Code Civ. P. art.

---

[15] R. Doc. No. 1-1, ¶ 2 (alleging that defendants, Rozel Operating Company ("Rozel") and LLOG Exploration & Production Company, L.L.C. ("LLOG"), are Louisiana citizens). Defendants dispute the allegation of nondiverse citizenship as to LLOG, *see* R. Doc. No. 51, at 6 n.2, but not as to Rozel.

[16] R. Doc. No. 51, at 4-12.

[17] As noted in *Total*, 2014 WL 6750649, at *4 n.7, the Fifth Circuit prefers the term "improper joinder," although "there is no substantive difference between" improper joinder and fraudulent joinder. *See Smallwood v. Illinois Cent. R.R.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004).

[18] The parties dispute whether the Fifth Circuit recognizes the *Tapscott* theory of egregious misjoinder. R. Doc. No. 51, at 8; R. Doc. No. 59, at 11-12. *See Total*, 2014 WL 6750649, at *5 (noting that "the Fifth Circuit has not *expressly* adopted the *Tapscott* misjoinder doctrine" but has "alluded to the doctrine favorably") (emphasis in original) (citing *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006)). The Court will assume for the sake of argument that *Tapscott* misjoinder is viable in the Fifth Circuit because even if it is, the joinder of these claims and parties is not "'so egregious as to constitute fraudulent joinder.'" *See Total*, 2014 WL 6750649, at *5 ("For purposes of the instant motion to remand, the Court will assume that egregious misjoinder per *Tapscott* is a potential basis for Defendants to remove."); *see also Richmond v. Chubb Grp. of Ins. Cos.*, No. 06-3973, 2006 WL 2710566, at *6 (E.D. La. Sept. 20, 2006) (Africk, J.) (same).

461.[19] A plaintiff in Louisiana state court may cumulate claims against multiple defendants if "[t]here is a community of interest between the parties joined." La. Code Civ. P. art. 463.[20] "The Louisiana Fourth Circuit Court of Appeal has stated that a 'community of interest is present between different actions or parties, where enough factual overlap is present between the cases to make it commonsensical to litigate them together.'" *J.O.B. Invs.*, 908 F. Supp. 2d at 776 (quoting *Mauberret-Lavie v. Lavie*, 850 So. 2d 1, 2 (La App. 4 Cir. 2003)).

In other words, the issue is not whether the Parish erroneously cumulated these claims against these defendants, or even whether the state court would sever the claims.[21] Rather, the issue is whether the Parish's cumulation of these claims against these defendants was "so *egregious* as to constitute fraudulent joinder." *See Richmond*, 2006 WL 2710566, at *6 (emphasis added). As to that latter question, the Court agrees with the reasoning in *Total*. *See* 2014 WWL 6750649, at *8 ("But even if the claims are misjoined under article 463, the Court is

---

[19] "Louisiana federal courts have not been of one mind" with respect to whether the egregious joinder analysis should look to state or federal joinder rules. *J.O.B. Invs.*, 908 F. Supp. 2d at 775 (footnote omitted) (Vance, C.J.). Application of state joinder law is logical "since plaintiffs must follow state joinder rules in bringing their claims, and fraudulent joinder analysis requires federal courts to look at the substantive law of the state in which the action was brought to determine whether plaintiffs can state a claim." *Id.*; *see also Richmond*, 2006 WL 2710566, at *6 n.28 ("[T]he relevant question is not whether plaintiffs properly joined [defendants] under Rule 20(a) but whether they were properly joined under Louisiana law.") (Africk, J.). In this case, the Court will look to Louisiana joinder rules because the parties rely on that law and do not suggest that the outcome would be different if federal joinder rules governed the issue. R. Doc. No. 51, at 8-9; R. Doc. No. 59, at 13.
[20] Article 463 also imposes other requirements not relevant to this issue. *See* La. Code. Civ. P. art. 463(2), (3) (requiring jurisdiction, proper venue, and that "[a]ll of the actions cumulated are mutually consistent and employ the same form of procedure").
[21] Defendants could have challenged the cumulation in state court and then removed any severed actions on the basis of complete diversity, which may have been the better practice. *See* Charles Alan Wright, et al., Federal Practice & Procedure § 3723 (4th ed. 2009) ("In many cases, confusion could be reduced if removing parties would challenge fraudulent joinders and misjoinders in state court, before defendants file a removal notice.").

5

not persuaded that the misjoinder would be egregious to the point of constituting a fraudulent joinder.").

As in *Total*, there are factual overlaps between the claims cumulated in the above-captioned case related to the geographical and historical similarities between the disputed permits and activities, as well as the cumulative impact of the alleged permit violations and how those impacts might be remedied. This is certainly not the only way the Parish could have cumulated its claims, but the Court declines to hold that it is *so* egregious and so lacking in common sense that it rises to the level of fraudulent joinder.

The briefing on the present motion to remand ignores the practical, common-sense test for cumulation of claims and offers no persuasive reason why the *Total* opinion was wrong in finding no egregious cumulation.[22] Accordingly, the Court cannot ignore the citizenship of any non-diverse defendants and complete diversity of citizenship is absent which defeats diversity of citizenship as a basis for jurisdiction.[23]

**B.    OCSLA Jurisdiction**

Next, defendants urge the Court to find jurisdiction pursuant to OCSLA, which states in relevant part:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or

---

[22] R. Doc. No. 51, at 13-15. The Court does not read the *Total* order, as defendants suggest, to rely "completely upon" the Parish's pursuit of a "holistic remedy." R. Doc. No. 51, at 14. Rather, the *Total* court considered both "the commonalities amongst production sites in a field," which did not "*alone* carr[y] the day," as well as the "injury being sued upon and the remedy sought." *See Total* 2014 WL 6750649, at *7 (emphasis added).

[23] Therefore, the Court does not reach the alternative question of whether the State of Louisiana is a real party in interest whose lack of citizenship defeats diversity jurisdiction. R. Doc. No. 26-1, at 3-7; R. Doc. No. 51, at 16-23; *Total*, 2014 WL 6750649, at *9 ("The Court's ruling on the egregious misjoinder issue renders moot the question whether the claims on behalf of the State destroy diversity jurisdiction.").

production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals . . . .

43 U.S.C. § 1349(b)(1). "The Fifth Circuit has interpreted § 1349(b)(1) as straightforward and broad." *Total*, 2014 WL 6750649, at *14. "Courts typically assess jurisdiction under this provision in terms of whether (1) the activities that caused the injury constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation." *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014) (citing *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 568-69 (5th Cir. 1994)). "Operation" means "'the doing of some physical act.'" *Tenn. Gas Pipeline v. Hous. Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996) (quoting *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1207 (5th Cir. 1988)).

The Court agrees with and adopts the persuasive reasoning of *Total* with respect to OCSLA jurisdiction. As explained in *Total*, the alleged permit violations underlying the Parish's claims did not occur on the OCS; therefore, this case does not "arise out of" an "operation conducted *on* the outer Continental Shelf," 43 U.S.C. § 1349(b)(1) (emphasis added), and the OCSLA jurisdictional analysis fails at the first step. *See Total*, 2014 WL 6750649, at *16.

The Court is not persuaded by defendants' contention that *Total* is "inconsistent with the plain language of § 1349(b)(1) and conflicts with controlling Fifth Circuit precedent."[24] First, the *Total* order did not apply a "situs" requirement other than the statutory requirement of an "operation *on* the outer Continental Shelf."[25] 43 U.S.C. § 1349(b)(1) (emphasis added); *see Total*, 2014 WL 6750649, at *16 ("Whether or not one characterizes this requirement as one of 'situs,' is immaterial."). Second, defendants do not convincingly explain how the definitions of

---

[24] R. Doc. No. 51, at 35.
[25] R. Doc. No. 51, at 35-37.

"exploration," "development," and "production" in 43 U.S.C. § 1331 displace the express requirement of an operation *on* the outer Continental Shelf set forth in § 1349(b)(1).[26] Third, defendants do not convincingly discredit *Total*'s interpretation of several Fifth Circuit decisions which found OCSLA jurisdiction in the absence of a physical act on the outer Continental Shelf.[27] As *Total* explained, those "commercial litigation cases involved equipment and production located on the OCS and the cause of action directly pertained to that equipment and/or production." *See* 2014 WL 6750649, at *17 (citations omitted). Fourth, the Court agrees with *Total*'s rejection of defendant's argument that the potential effect of the Parish's lawsuit on the oil and gas industry as a whole creates OCSLA jurisdiction[28] because, as *Total* concluded, "the relationship between the injuries in this case and the activities that cause them and any operations on the OCS is simply too remote and attenuated." 2014 WL 6750649, at *18 ("Exercising jurisdiction in this manner would give federal courts jurisdiction over virtually any oil or gas dispute regardless of its relationship to OCS operations.").

Accordingly, the Court adopts the reasoning of *Total* with respect to OCSLA jurisdiction and finds no basis to depart from or amend that court's conclusion that the Court has no OCSLA jurisdiction over the Parish's claims.

**C.  Maritime Jurisdiction**

The parties also dispute whether this lawsuit was removable from state court pursuant to this Court's admiralty jurisdiction. As in *Total*, the dispositive issue is, assuming the Parish's claims are maritime claims, whether those claims are removable. The Court agrees with *Total* that they are not and were not made so by recent amendments to the removal statute. *See* 2014

---

[26] R. Doc. No. 51, at 38.
[27] R. Doc. No. 51, at 38-39.
[28] R. Doc. No. 51, at 39-41.

WL 6750649, at *20. The Court acts against a backdrop of many district court opinions deciding the removability of claims, filed in state court, that are within the Court's admiralty jurisdiction. In particular, the Court finds persuasive the reasoning in *Gregoire v. Enterprise Marine Services, LLC*, No. 14-840, 2014 WL 3866589 (E.D. La. Aug. 6, 2014) (Duval, J.), and *Perrier v. Shell Oil Co.*, No. 14-490, 2014 WL 2155258 (E.D. La. May 22, 2014) (Zainey, J.). Accordingly, the Court adopts those opinions and joins the line of cases adhering to the "long-standing rule that general maritime law claims require some other non-admiralty source of jurisdiction to be removable." *Gregoire*, 2014 WL 3866589, at *9.[29]

In opposition to this motion to remand, defendants cite contrary district court decisions, including *Ryan v. Hercules Offshore*, 945 F. Supp. 2d 772 (S.D. Tex. 2013).[30] The Court recognizes the existence of this contrary authority, but finds it unpersuasive for the reasons set forth in *Gregoire*, 2014 WL 3866589, at *8-9. Accordingly, admiralty jurisdiction does not provide an independent basis for removal of this lawsuit.[31] The Court declines to exercise its discretion to certify this question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), as defendants request.[32]

### D. Federal Question Jurisdiction

---

[29] In so holding, the Court joins many other sections of this district to have addressed the issue. *See, e.g.*, *Grasshopper Oysters, Inc. v. Great Lakes Dredge & Dock, LLC*, No. 14-934, 2014 WL 3796150 (E.D. La. July 29, 2014) (Berrigan, J.); *Henry J. Ellender Heirs LLC v. Exxon Mobil Corp.*, No. 14-711, 2014 WL 4231186 (E.D. La. Aug. 26, 2014) (Fallon, J.); *Riley v. LLOG Exploration Co.*, No. 14-437, 2014 WL 4345002 (E.D. La. Aug. 28, 2014) (Milazzo, J.); *Bisso Marine Co. v. Techcrane Int'l, LLC*, 14-0375, 2014 WL 4489618, (E.D. La. Sept. 10, 2014) (Feldman, J.); *Yavorsky v. Felice Navigation, Inc.*, No. 14-2007, 2014 WL 5816999 (E.D. La. Nov. 7, 2014) (Lemmon, J.).

[30] R. Doc. No. 51, at 43-44 & n.58.

[31] The Court therefore does not reach the questions of whether any of the Parish's claims are governed by maritime law, or whether all of the Parish's claims would have to be maritime claims to be removable. *See Total*, 2014 WL 6750649, at *19-20.

[32] R. Doc. No. 51, at 42.

Finally, defendant, Apache Oil ("Apache"), asserts that there is federal question jurisdiction pursuant to a theory not raised in *Total*.[33] According to Apache, the Parish's claims arise under the laws of the United States for the purposes of 28 U.S.C. § 1331 because the Parish's requested remedy, coastal restoration, implicates the authority of the U.S. Army Corps of Engineers.[34]

State law, not federal law, creates the Parish's causes of action for violations of state permits, which negates the "[m]ost direct[]" way for a case to arise under federal law for the purposes of 28 U.S.C. § 1331. *See Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). "But even where a claim finds its origins in state rather than federal law," the Supreme Court has "identified a special and small category of cases in which arising under jurisdiction still lies." *Id.* (internal quotation marks omitted). In that small category, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 1065. All four requirements must be met for a state-law claim to arise under federal law. *See id.* This "doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). The Supreme Court has not "treated 'federal issue' as a password opening federal courts to any state action embracing a point of federal law." *Id.* at 314.

Apache offers only a nebulous characterization of the questions of federal law which it contends are implicated by the Parish's lawsuit: "questions concerning the scope of the [Army Corps of Engineers'] authority to assert ultimate control over operations in the Coastal Zone and

---

[33] R. Doc. No. 54.
[34] R. Doc. No. 54, at 3-4; R. Doc. No. 64, at 1-2.

whether that authority is exclusive, as well as questions concerning the effect of federal law on the permitted scope and authority of the state standards."[35] This supposed federal issue is far less defined than the kinds of specific and narrow questions of federal law which the Supreme Court has held satisfy the first two requirements of a federal issue "necessarily raised" and "actually disputed."

For example, in *Gunn*, a state-law malpractice claim necessarily required application of federal patent law to decide whether the outcome of an earlier patent case would have been different had an attorney raised a particular argument. *See* 133 S. Ct. at 1065.[36] In *Grable & Sons*, a state-law action to quiet title as to property sold at a federal tax sale necessarily required interpretation of a federal statute governing notice of that sale. *See* 545 U.S. at 314-15 ("Whether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case."). Thus, Apache's characterization of the "federal issue" is qualitatively different and much more vague than the specific federal issues held by the Supreme Court to give rise to federal question jurisdiction.

The decision in *Board of Commissioners of the Southeast Louisiana Flood Protection Authority-East v. Tennessee Gas Pipeline Co.* ("*Board of Commissioners*"), cited by Apache, is likewise distinguishable. 29 F. Supp. 3d 808 (E.D. La. 2014) (Brown, J.). In that case, the plaintiff agency brought state-law tort claims and based the standard of care on federal law,

---

[35] R. Doc. No. 54, at 10.
[36] The Supreme Court found that the state-law claim in *Gunn* met the first two *Grable* requirements because the patent law issue was "necessarily raised" and "actually disputed." *See id.* at 1065. However, the last two *Grable* requirements were lacking because the federal issue was "not substantial in the relevant sense" to "the federal system as a whole," *see id.* at 1066, and because having the case heard in state court did not disrupt "the appropriate 'balance of federal and state judicial responsibilities,'" *see id.* at 1068 (quoting *Grable*, 545 U.S. at 314).

which would require the court to decide "what duties these laws impose on Defendants." *See id.* at 854; *see also id.* (holding that "[i]n determining whether Plaintiff may prevail on its claim for negligence, the Court will have to *interpret federal law* to ascertain, among other issues," compliance with duties imposed by federal law) (emphasis added).

Apache does not articulate a remotely comparable specific federal issue in this case with any meaningful degree of specificity. Accordingly, the Court concludes that Apache has not carried its burden, as the proponent of jurisdiction, to establish that the Parish's claims fall into the "special and small category" of cases in which the Parish's specifically expressed state-law claims nonetheless arise under federal law. The Court lacks federal-question jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court lacks any basis to exercise subject matter jurisdiction over this removed action. Accordingly,

**IT IS ORDERED** that the Parish's motion to remand is **GRANTED** and that the above-captioned matter is remanded to the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana.

New Orleans, Louisiana, January 29, 2015.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**